## IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRUSTEES OF THE LOCAL 309
ELECTRICAL HEALTH AND WELFARE
FUND, TRUSTEES OF THE LOCAL 309
WIREMAN'S PENSION TRUST,
TRUSTEES OF THE LOCAL 309
VACATION TRUST FUND, TRUSTEES
OF THE SOUTHWESTERN ILLINOIS
JOINT APPRENTICESHIP & TRAINING
COMMITTEE, TRUSTEES OF THE
LOCAL 309 IBEW INCOME SECURITY
FUND, TRUSTEES FOR THE NATIONAL
ELECTRICAL BENEFIT FUND, BOARD
OF DIRECTORS OF THE LABOR
MANAGEMENT COOPERATION
COMMITTEE, TRUSTEES OF THE
NATIONAL LABOR MANAGEMENT
COOPERATION COMMITTEE,
ADMINISTRATIVE MAINTENANCE
FUND, and LOCAL 309
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS - AFL-CIO,

      Plaintiffs,

v.

      Case No. 3:25-CV-01870-NJR

MAY ELECTRICAL CONTRACTORS,
INC.,

      Defendant.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Under the terms of a collective bargaining agreement with Local 309 International

Brotherhood of Electrical Workers, AFL-CIO ("Local 309"), Defendant May Electrical

Contractors, Inc. was required to file reports and pay monthly contributions to several ERISA

welfare benefit funds on behalf of covered union employees. Plaintiffs—the Trustees of the

funds, Local 309, and certain labor management cooperation committees—allege that Defendant ceased making required payments and disclosures. They filed this lawsuit seeking an audit of Defendant's books and records, as well as damages for any unpaid sums discovered during the audit. Defendant was served with the complaint and summons but failed to appear.

## BACKGROUND

Defendant May Electrical Contracting, Inc. ("Defendant") is an Illinois corporation engaged in the electrical construction business. (Compl. ¶¶ 4-5). On March 29 and July 1, 2021, Jason May, the company's owner, signed a letter binding Defendant to the Inside Labor Agreement (the "Agreement") between Local 309 and the Southwestern Illinois Division-Illinois, National Electrical Contractors Association. (*Id.* ¶¶ 8-9; *see also* Docs. 1-1, 1-2). Under the Agreement, Defendant was obligated, each month, to file reports and pay contributions to certain ERISA welfare benefit trust funds and labor management coordinating committees for employees belonging to the collective bargaining group. (Compl. ¶ 10).

On July 3, 2025, Local 309 informed Defendant that it was out of compliance with the Agreement, principally because it failed to make contributions and issue reports for May, June, and a portion of July 2025. (*Id.* ¶ 15). Local 309 terminated the Agreement with Defendant effective July 8, 2025. (*Id.* ¶ 14).

Plaintiffs filed this action on October 7, 2025, seeking an accounting and audit of Defendant's books and records to ascertain the amounts owed under the agreement for the period between May 1, 2025, and July 8, 2025. The Trustees' claims are brought under 29 U.S.C. §§ 1132(g)(2) and 1145, while the other plaintiffs bring breach of contract claims under Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.

Defendant was served with the summons and complaint on October 22, 2025, but failed to timely file an answer or otherwise respond. (Doc. 9). At Plaintiffs' request, the Clerk of Court entered default. (Docs. 10, 11). Plaintiffs then moved for a default judgment, seeking an accounting and audit of Defendant's books and records "for the period of October 1, 2023 through July 8, 2025," and the payment of any unpaid contributions, interest and liquidated damages, and attorney's fees. (Doc. 15).

### LEGAL STANDARDS

Rule 55 sets out a two-part process when a defendant fails to appear or defend. Subsection (a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. Fed. R. Civ. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute the entry of judgment." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (4th ed.). "The basic effect . . . is that '[u]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.'" *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Next, unless the claim is for a "sum certain," the plaintiff must move for the entry of a default judgment. Fed. R. Civ. P. 55(b). "[T]he plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). Thus, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *See* 10A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2688.1 (4th ed.). A party's default also does not

establish that a plaintiff is entitled to the damages sought in the complaint. *See e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (quoting *In re* Catt, 368 F.3d at 793). Furthermore, both Rule 55(b)(2) and the law of this circuit make clear that "judgment by default may not be entered without a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *Id.* (quoting *Dundee Cement Co.*, 722 F.2d at 1323).

## DISCUSSION

Here, the facts pleaded by Plaintiffs, which are treated as true because of Defendant's default, establish liability. Plaintiffs allege that Defendant failed to abide by its obligations under the Agreement between Local 309 and the Southwestern Illinois Division-Illinois Chapter, NECA. (Compl. ¶¶ 9-10). Under the Agreement, Defendant was required to file monthly reports for each covered employee and pay employee benefit contributions to certain ERISA welfare benefit funds. (*Id.* ¶ 10; Doc. 1-3, pp. 23-26). Defendant agreed to be bound by the trust agreements of these funds, as well as rules and regulations adopted by the funds' trustees. (Doc. 1-3, p. 26). Yet starting in May 2025, Defendant failed to make payments and share reporting documents. (*Id.* ¶ 15). These facts are sufficient to support a finding of liability to the benefit funds' trustees under Sections 502(g)(2) and 515 of ERISA, 29 U.S.C. §§ 1132(g)(2), 1145, which create a cause of action for fiduciaries to recoup unpaid contributions under a labor agreement. *Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989). Under the statute, the trustees are entitled to:

(A)   the unpaid contributions,
(B)   interest on the unpaid contributions,
(C)   an amount equal to the greater of—
    (i)   interest on the unpaid contributions, or
    (ii)   liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D)   reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E)   such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2).

Defendant's failure to make contributions required by the Agreement also means that it is liable to Local 309, whose claim proceeds on a breach of contract theory under the LMRA, and the other plaintiffs,[1] who bring claims as third-party beneficiaries of the Agreement. *See Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 667 (7th Cir. 2007); *Trs. of Loc. Union 531, I.B.E.W. & N.E.C.A. Pension Fund v. Hoosier Commc'ns LLC*, No. 22-1016, 2023 WL 3436907, at *3 (N.D. Ind. Apr. 3, 2023) (explaining that the elements of a breach of contract claim under the LMRA are the same as a claim under Section 515 of ERISA); *see also Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Eng'rs, Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Genrus Corp.*, No. 22-01957, 2023 WL 2125983, at *5 (E.D.N.Y. Feb. 1, 2023). Therefore, Plaintiffs have established Defendant's liability on their claims for unpaid contributions.

However, this finding does not mean Plaintiffs are entitled to a default judgment in the form they propose. Plaintiffs have not put forward any assessment of damages that would be necessary for the Court to enter final judgment in their favor. *See Bldg. Trades United*

---

[1] These plaintiffs are the Labor Management Cooperation Committee, the National Labor Management Cooperation Committee, and the Administrative Maintenance Fund. (Compl. ¶¶ 59-72).

*Pension Tr. Fund v. Am. Demolition Corp.*, No. 24-375, 2024 WL 2891849, at *3 (E.D. Wis. June 10, 2024). Plaintiffs ask the Court to include, as part of the judgment, an order requiring Defendant to submit to an accounting and audit and the payment of any unpaid contributions discovered during the audit. (Doc. 15, p. 4). But Plaintiffs cite no authority justifying that open-ended form of judgment. Indeed, caselaw explaining that a district court may not enter default judgment without a hearing unless damages can be proved by affidavit implies a judgment of that type would be inappropriate. *See e360 Insight*, 500 F.3d at 602. Plaintiffs' proposal would short-circuit the procedure contemplated by the federal rules.

To be sure, Plaintiffs face a predicament. Defendant's default leaves Plaintiffs unable to invoke many of the normal discovery tools necessary to ascertain damages. In ERISA cases where the scope of a defendant's liability is unknown, district courts in this circuit have addressed default judgment motions in two typical ways. Under one common approach, courts will grant a plaintiff's motion for default judgment, order the defendant to submit to an audit, and reserve entering judgment until the plaintiff provides the court with the audit results and a calculation of damages, interest, and attorney's fees. *See, e.g.*, *Trs. of N.E.C.A./Loc. 145 I.B.E.W. Pension Plan v. Guizar*, No. 23-04115, 2025 WL 1348904, at *2 (C.D. Ill. May 8, 2025); *Wisconsin Elec. Emps. Health & Welfare Plan v. Seeing Further Commc'ns LLC*, No. 24-156, 2024 WL 3912689, at *2 (W.D. Wis. Aug. 23, 2024); *Chicago & Vicinity Laborers' Dist. Council Pension Plan v. Accurate Constr. Site Servs., Inc.*, No. 20-6047, 2021 WL 12186205, at *1 (N.D. Ill. Nov. 15, 2021); *Cent. Laborers' Pension Welfare & Annuity Funds v. Stormer Excavating, Inc.*, No. 16-1057, 2017 WL 11846823, at *2 (S.D. Ill. May 22, 2017); *Wisconsin Sheet Metal Workers Health & Ben. Fund v. CJ Contracting, LLC*, No. 13-991, 2013 WL 5936344, at *3 (E.D. Wis. Nov. 5, 2013). Other courts deny the motion for default judgment but require the defendant to

participate in an audit and direct the plaintiff to renew its request for default judgment after the completion of the audit. *E.g., Bldg. Trades United Pension Tr. Fund v. Am. Demolition Corp.*, No. 24-375, 2024 WL 2891849, at *3 (E.D. Wis. June 10, 2024); *Wisconsin Sheet Metal Workers Health & Benefit Fund v. Total Heating & Cooling, LLC*, No. 23-1675, 2024 WL 1406117, at *3 (E.D. Wis. Apr. 2, 2024) *Elec. Constr. Indus. Prefunding Credit Reimbursement Program v. CButts Elec. Inc.*, No. 21-130, 2022 WL 1555239, at *1 (E.D. Wis. May 17, 2022); *Bldg. Trades United Pension Fund v. DS Prop. Maint. & Mgmt., LLC*, No. 21-178, 2021 WL 4652383, at *2 (E.D. Wis. Oct. 7, 2021). The difference between these approaches appears to be a matter of form rather than substance. The common thread is the courts' recognition that equitable relief—in the form of an audit—is appropriate as a step toward determining the form of final judgment.[2]

Based on this practice, the Court will grant Plaintiffs' motion in part with regard to Defendant's liability and order Defendant to submit to an audit but will deny the motion to the extent it seeks entry of final judgment at this time. It is well-settled that an audit is within the panoply of remedies authorized by ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2), which permits "equitable relief as the court deems appropriate." *Seeing Further Commc'ns LLC*, 2024 WL 3912689, at *2 (collecting cases); *Operating Eng'rs Loc. 649 Annuity Tr. Fund v. Neidig Excavating, Inc.*, No. 18-1330, 2019 WL 13292944, at *2 (C.D. Ill. Jan. 4, 2019); *see also Loc. 513, Int'l Union of Operating Eng'rs, AFL-CIO v. Weider Excavating, L.L.C.*, No. 09-429, 2009 WL 1138037, at *1 (E.D. Mo. Apr. 27, 2009) (holding that an injunction authorizing an audit was appropriate where the amount of any delinquency was not known). Although Plaintiffs' motion does not discuss the factors typically addressed by courts when assessing equitable

---

[2] Of course, a final judgment directing an audit might be appropriate if an audit were the only relief Plaintiffs requested in the complaint.

relief, the Court finds that such relief is warranted here. *See CJ Contracting, LLC*, 2013 WL 5936344, at \*3 (finding that plaintiffs had established irreparable harm and no adequate remedy at law where, absent an audit, they could not ascertain or recover unpaid contributions and holding that any harm to the defendant caused by the audit would be outweighed by the harm to the plaintiffs of being unable to recover contributions). The Court therefore will order Defendant to submit to an audit of its books and papers with respect to covered employees for the period between May 1, 2025 and July 8, 2025.[3]

### CONCLUSION

Accordingly, it is **ORDERED** that Plaintiffs' Motion for Default Judgment (Doc. 15) is **GRANTED in part** as to liability and as to their entitlement to an audit of Defendant's books and records. The remainder of the motion is **DENIED without prejudice**. Plaintiffs shall serve a copy of this order on Defendant **on or before April 2, 2026**.

It is **FURTHER ORDERED** that **on or before April 30, 2026**, Defendant shall furnish to Plaintiffs' counsel, for the period covering May 1, 2025, to July 8, 2025, any and all documents and records showing the hours worked by and wages paid to union employees. The parties shall collaborate in good faith regarding the form and scope of records necessary for Plaintiffs to ascertain the scope of Defendant's liability.

It is **FURTHER ORDERED** that **on or before May 28, 2026**, Plaintiffs may file a renewed motion for default judgment, together with a certificate of service of the motion on

---

[3] Plaintiffs appear to seek an audit of Defendant's records for a broader period, from October 1, 2023, through July 8, 2025. (Doc. 15, p. 3). However, Plaintiffs' complaint does not allege Defendant was delinquent in its reporting or contribution obligations prior to May 2025. Nor does the complaint describe any other audit right under the Agreement. Mindful that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), the Court will limit its order to records for the period between May 1, 2025 and July 8, 2025.

Defendant, with an accounting of any unpaid contributions, interest and liquidated damages revealed by the audit, along with reasonable attorney's fees and costs that Defendant owes to Plaintiffs. Any request for attorney's fees shall be accompanied by supporting documentation sufficient for the Court to determine whether the request is reasonable under Seventh Circuit caselaw. *See Guizar*, 2025 WL 1348904, at *2 n.3.

**IT IS SO ORDERED.**

**DATED:    March 26, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**